[No. 11482. Department One. November 29, 1913.]

ARMOUR & COMPANY, *Appellant*, v. MRS. H. B. JESMER *et al.*,
*Respondents.*[1]

SALES—PERFORMANCE OR BREACH—ACTION BY SELLER—EVIDENCE—SUFFICIENCY. The jury is warranted in finding that a contract for the sale of butter was not breached by underweights where the butter was packed in Minnesota and the weight stamped upon it at the time in compliance with the oleomargarine law, it was subject to some shrinkage, and no complaint was made when some of the rolls were found to be slightly under weight.

SALES—CONTRACTS—LEGALITY—ACCEPTANCE AND DELIVERY. A contract calling for the delivery of "renovated" butter being legal in itself, cannot be repudiated as illegal by reason of the fact that the butter was misbranded, under Rem. & Bal. Code, § 5447e, prohibiting its sale unless marked as "renovated butter," where the purchaser ac-

[1]Reported in 136 Pac. 689.

cepted partial performance without objecting to the butter as mis-
branded or giving the seller an opportunity to re-mark it.

SAME—LEGALITY—VIOLATION OF STATUTE. Since a contract calling
for the delivery of "renovated butter," required by law to be branded
as such, was not illegal and could be performed without violating
any law, a purchaser accepting partial performance without demand-
ing and receiving literal compliance with the statute, cannot re-
pudiate the contract on the assumption that the seller will continue
to violate the law; since the illegal acts did not enter into the
promise or the consideration.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered February 26, 1913, in favor of
the defendants, notwithstanding the verdict of a jury ren-
dered in favor of the plaintiff, in an action on contract. Re-
versed.

*Peters & Powell*, for appellant.

*John E. Ryan* and *Grover E. Desmond*, for respondents.

CHADWICK, J.—This action is brought to recover the dif-
ference between the contract price and the price on resale of
certain butter, which plaintiff had agreed to deliver and de-
fendants had agreed to receive from plaintiff. The contract
called for delivery of a gross amount in lots, at prices varying
from month to month. A part of the butter was delivered;
but the price having fallen, defendants became dissatisfied and
a new contract was entered into, in all respects the same as
the first except that the price was reduced. The butter was
packed in cubes marked eighty-one pounds, and defendants
took delivery of ten of these after the execution of the sec-
ond contract. Butter continued to decline, and defendants
finally refused to accept delivery of any more butter under
the contract, no reason being assigned other than that they
could buy butter in the market at a lower price than the con-
tract called for. Defendants answered, denying damages,
and affirmatively pleaded that the butter was under weight
and that it was not marked or branded as required by law.
The case went to a jury and a verdict was returned in favor

of the plaintiff.   A judgment was entered, however, *non obstante* in favor of the defendants.

There is some testimony tending to show that some of the cubes were slightly under weight, and that butter is subject to some shrinkage.   The butter was packed in the state of Minnesota, and the weight was stamped upon it at the time in compliance with the act of Congress known as the Oleomargarine law.   No complaint of under weight was made at the time of delivery, or credit claimed upon the account sales or contract by the defendants.   Upon this state of facts, we think the jury was warranted in finding for the plaintiff upon this issue, and we will accept the verdict as final.

The only question remaining is whether the butter was misbranded.   The contract called for the delivery of "renovated storage" butter.   The butter delivered was what is called renovated or process butter.   These adjectives are used in the Federal act to describe the same article.   Act May 9, 1902, 32 U. S. Stats. at Large, p. 193, and Regulation No. 1, Dept. of Internal Revenue.   Plaintiff had complied strictly with the Federal statute.   The defense of misbranding is based on the local law, Rem. & Bal. Code, § 5447e (P. C. 139 § 51), which provides that,

"No person, firm or corporation shall manufacture, sell or offer for sale or have in his possession with intent to sell butter known as process butter, unless the package in which the butter is sold has marked on the side of it the words 'renovated butter' in capital letters one inch high and one-half inch wide with ink which is not easily removed. . . . all process butter shipped from other states shall be subject to the same regulations as provided in this section. . . ."

An offense against the law is made a misdemeanor and the offender is subjected to certain penalties provided in the act.

It is the contention of the defendants, and it was no doubt the opinion of the trial judge when he entered the judgment *non obstante,* that the law is that when the doing of an act is prohibited by statute, any contract or transaction in con-

travention thereof is void, and that no recovery can be had thereunder. Apt authority is cited to sustain this premise, the principal cases being: *Miller v. Ammon*, 145 U. S. 421; *Pinney v. First Nat. Bank of Concordia*, 68 Kan. 223, 75 Pac. 119, 1 Am. & Eng. Ann. Cas. 331; *Church v. Proctor*, 66 Fed. 240. Other cases relied on will be found in 35 Cyc. 88.

Plaintiff relies upon our own cases. *Horrell v. California etc. Ass'n*, 40 Wash. 531, 82 Pac. 889; to which may be added *Way v. Pacific Lum. & Timber Co.*, 74 Wash. 332, 133 Pac. 595; *LaFrance Fire Engine Co. v. Mt. Vernon*, 9 Wash. 142, 37 Pac. 287, 38 Pac. 80, 43 Am. St. 827. Not being of one accord when in consultation, and it being possible to rest our judgment upon firm legal ground, it was decided that the writer of the opinion should not go into the questions raised under the authorities cited nor discuss the question that occurred to some of us, whether the names "Process" and "Renovated" should not be held to be synonymous (see statute) in a civil action based upon a partly executed contract.

Whether a party having contracted for a certain kind of butter and having accepted a part under a different tradename, can repudiate the contract, no question being raised as to quality and no objection being made on account of misbranding, without giving the vendor an opportunity to relabel the goods in order to comply with the local statute or to make delivery in *form* required by statute, is the question confronting us. The contract in this case is lawful. It does not require or contemplate the doing of an unlawful act. "There is no policy of the law against the plaintiff's recovery unless his contract of sale was illegal and a contract is not necessarily illegal because it is carried out in an illegal way." *Fox v. Rogers*, 171 Mass. 546, 50 N. E. 1041.

See, also, *Barry v. Capen*, 151 Mass. 99, 23 N. E. 735, 6 L. R. A. 808; *Dowley v. Schiffer*, 13 N. Y. Supp. 552. The contract calls for the delivery of renovated butter, and

renovated butter was delivered. The only objection is that the article called for by the contract was labeled "Process" instead of "Renovated." To sustain the judgment of the lower court, assuming that the statute applies in this case, we must hold that plaintiff could not and would not have finished performance of the contract without doing an illegal act —that is, deliver butter that was marked with the word "Process," instead of the word "Renovated." No such conclusion follows. A mutual duty rests upon parties to a contract. There is an obligation to deal fairly. After partial performance, a vendee cannot refuse to accept delivery for some undisclosed reason that does not go to the substance of the contract. If defendants had disclosed the reason now set up, plaintiff might have met the objection without appreciable cost or effort. The word "Process" could have been marked out and the word "Renovated" substituted therefor. Defendants would have then received the contracted goods under the name demanded in their answer.

But if we assume that there was no duty resting upon defendants to object on account of the name and that the prior deliveries were in fact illegal, the judgment cannot be sustained. The contract being lawful and calling for partial deliveries, courts will not presume, in the absence of a tender of a proscribed article or other convincing evidence, that a party will violate or continue to violate the law. One who has received without objection a part of that which he has contracted for, should not be heard to say in court for the first time that he will reject future deliveries, no other reason appearing than that which he has received and paid for was not marked as the statute requires. The reason for this holding is that, if the name of the article to be delivered is material (the butter being the same whether it is called process or renovated), it is within the power of the vendee to demand and receive literal compliance. Having failed to make his present objection known, and being in a sense himself in default, he cannot assume that the vendor will do that

which is unlawful. The contract was good as a whole. The alleged illegal acts entered neither into the promise nor into the consideration. It might have been performed without violating any law:

"Then it is only a natural and legal presumption that it will be so performed, or at least there is no legal presumption that it will not be so performed." *Sheffield v. Balmer*, 52 Mo. 474, 14 Am. Rep. 430.

The test is laid down in *Dunham v. Hastings Pavement Co.*, 57 App. Div. 426, 68 N. Y. Supp. 221-223.

"It is quite evident to our minds that the mere performance of one or several illegal acts would not necessarily render this contract invalid. Mere misconduct in the performance of the contract does not have the effect of vitiating it. On the other hand, if the parties contemplated that illegal acts condemned by law were essential or necessary in its performance, the court would not stop to measure the gravity of the act, but would declare, as matter of law, that the contract was void."

The case will be remanded with instructions to enter a judgment on the verdict.

CROW, C. J., GOSE, ELLIS, and MAIN, JJ., concur.